UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAMANTHA HUSS,

Plaintiff,

v.

VICTOR ACAYAN, ET AL.,

Defendants.

Case No.: 26-cv-3431-RSH-MSB

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

[ECF No. 9]

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. *See* ECF No. 9. The Motion has been fully briefed.

## I. FACTUAL BACKGROUND

This case arises out of an incident that took place on August 11, 2025, at the California Department of Corrections and Rehabilitation ("CDCR") Richard J. Donovan Correctional Facility ("RJD"). ECF No. 1 ("Complaint") ¶¶ 15–22. Plaintiff is a correctional lieutenant and a sworn peace officer who works for CDCR and RJD. *Id.* ¶ 12. Plaintiff alleges that, on the date of the incident, she received a call from Defendant Sergeant David Eustaquio, who "ordered" Plaintiff to report to the office of the Employee Relations Officer ("ERO" or, as a place, "ERO Office") at RJD. *Id.* ¶ 15. Upon arrival, ERO Office staff directed Plaintiff to enter an adjacent office. *Id.* ¶ 16. Plaintiff entered

that office and was greeted by Internal Affairs Special Agents Jesse Ferguson and Stephen Velazco. *Id.* ¶ 17. Officers Ferguson and Velazco informed Plaintiff that they intended to interview her and declined to reveal any details about the nature of the interview until the interview was "on record." *Id.*

Plaintiff alleges that she requested that her supervisor be notified of the interview and told that she would be late to work. *Id.* ¶ 18. Plaintiff also requested legal counsel to represent her during the interview. *Id.* Officer Ferguson "ordered [Plaintiff] to take a seat" and informed Plaintiff that he would "call[] 'someone for [her].'" *Id.* Officer Ferguson attempted to call Plaintiff's supervisor, but the call failed. *Id.* Plaintiff alleges that she then attempted to leave the interview, but Officer Ferguson "covered the door[,] precluding her from exiting the room." *Id.* Plaintiff alleges that Officer Ferguson next asked Plaintiff if she was "ready to proceed," to which Plaintiff responded by asking about the nature of the interview and for legal counsel to be present. *Id.* ¶ 19. Plaintiff alleges that Officer Ferguson declined to respond to her first request and ignored her second one. *Id.*

Plaintiff alleges that Officer Ferguson then started a recording device and that he and Officer Velazco introduced themselves as CDCR Special Agents employed by the Office of Internal Affairs. *Id.* ¶ 20. Two unknown women attended the interview via a Teams video conference. *Id.* The interview focused on a "leaked video" of a homicide inside RJD "to a person known as 'Hector Bravo.'" *Id.* ¶ 21. Plaintiff explained that she had accessed the video because she was the "incident commander," and thus had a "legitimate business reason" for doing so. *Id.* Plaintiff alleges that Officer Ferguson accused her of leaking the video to Bravo. *Id.*

Plaintiff alleges that she was not told whether the investigation concerned a criminal or administrative matter, whether she was a suspect or witness, whether she had the right to remain silent or to obtain legal counsel, whether the interview was voluntary, or whether she was free to leave. *Id.* ¶ 22. Plaintiff also alleges that she was not given a "Lybarger warning," which Plaintiff states is an administrative admonition. *Id.* Plaintiff alleges that her participation in the interview was "compelled and involuntary" and that she

"reasonably believed that she was not at liberty to terminate the interrogation" given that the office was closed, Officer Ferguson had already "precluded her exit," and Officer Eustaquio had previously ordered her to go to the ERO Office. *Id.* Plaintiff further alleges that she "reasonably believed that unilaterally terminating the interrogation would result in punitive action for insubordination." *Id.*

Plaintiff alleges that she filed an "Excluded Employee Grievance Supplement" on August 26, 2025. *Id.* ¶ 23. CDCR responded on October 10, 2025, denying her grievance and all requested remedies. *Id.* ¶ 25.

Plaintiff brings six causes of action in relation to this incident. First, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 by depriving her of three separate constitutional rights: the right to be free from unreasonable seizures under the Fourth Amendment; the right against self-incrimination under the Fifth Amendment; and the right to counsel under the Sixth Amendment. *Id.* at 5–6. Second, Plaintiff alleges that Defendants violated the Bane Act, Cal. Civ. Code § 52.1, by depriving her of two separate rights under the California Constitution: the right to be free from unreasonable seizures under Cal. Const. art. I, § 13; and the right to due process under Cal. Const. art. I, § 7. *Id.* at 7. Third, Plaintiff asserts a claim for intentional infliction of emotional distress against Defendants Officers Ferguson and Velazco. *Id.* at 8. Fourth Plaintiff asserts a claim for negligent infliction of emotional distress against Defendants Officers Ferguson and Velazco. *Id.* Fifth, Plaintiff asserts a claim for false imprisonment against Defendants Officers Ferguson and Velazco. *Id.* Lastly, Plaintiff asserts a claim for violation of the California Public Safety Officer's Bill of Rights Act ("POBRA"), Cal. Gov't Code § 3300, *et seq.*, against Defendants Officers Ferguson and Velazco. *Id.* at 9.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, the Court accepts all material factual allegations as true and draws all reasonable inferences in favor of the non-movant. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Conclusory allegations need not be accepted as true. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

## III. ANALYSIS

### A. Federal Claims

Plaintiff's first cause of action, alleging a violation of 42 U.S.C. § 1983, consists of three separate claims premised on separate violations of the Fourth, Fifth, and Sixth Amendments. Plaintiff indicates her intent to voluntarily dismiss all of her claims against Defendants Watch Commander Acayan and Investigative Services Unit Sergeant Eustaquio. *See* ECF No. 10 (Pl's Opp'n to Def's Mot. to Dismiss), at 16. Plaintiff also indicates her intent to voluntarily dismiss her § 1983 claim premised on a violation of the Sixth Amendment. *Id.* Thus, the federal claims that are subject to the instant motion are premised on violations of the Fourth and Fifth Amendments, against Officers Ferguson and Velazco. *Id.*

#### *i. Fourth Amendment Claim*

Plaintiff's Fourth Amendment claim alleges that she was subjected to a warrantless and unlawful unreasonable seizure during the August 11, 2025 questioning, during which Officer Ferguson "covered the door[,] precluding her from exiting the room.". ECF No. 1 ¶¶ 32, 33. She alleges that she reasonably believed that she was not free to leave the interview because "1) the defendant officers outnumbered her; 2) the defendant officers were armed; 3) the defendant officers confronted [Plaintiff] in a non public setting; 4) the defendant officers acted in a manner implying that [Plaintiff's] compliance was mandatory; and, 5) the defendant officers did not advise [Plaintiff] that she was free to leave." *Id.* ¶ 32.

Plaintiff also alleges that she repeatedly asked for a lawyer, but her requests were ignored. *Id.* ¶¶ 18–19. She further alleges that Eustaquio had "ordered her to report to the ERO's office," and that she "reasonably believed that unilaterally terminating the interrogation would result in punitive action for insubordination." *Id.* ¶ 22.

"The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citation omitted). "A seizure of the person within the meaning of the Fourth . . . Amendment[] occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (internal quotation marks and citation omitted). The Supreme Court has identified several "examples of circumstances that might indicate a seizure, *even where the person did not attempt to leave*, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Kaupp*, 538 U.S. at 630 (citation modified) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). However, "[a] law enforcement officer is not seized for purposes of the Fourth Amendment simply because a supervisor orders him to remain at work after the termination of his shift or to come into the station to submit to questioning about the discharge of his duties as a peace officer." *Aguilera v. Baca*, 510 F.3d 1161, 1168 (9th Cir. 2007). "[T]he Fourth Amendment does not protect against the threat of demotions or job loss." *Id.* at 1169.

The Complaint here does not adequately allege a seizure. The fact that Plaintiff—a corrections lieutenant who works in a jail with other corrections officers—was directed by other prison staff to report to an office, where she met with two internal affairs officers who questioned her, does not by itself amount to a seizure. Nor did Plaintiff's belief that she could suffer adverse employment consequences for failing to participate, or her desire

for more information about the interview or to have a lawyer present, establish a Fourth Amendment seizure. *See Aguilera*, 510 F.3d at 1168. The closest the Complaint comes to alleging a seizure is the allegation that she "attempted to leave but Ferguson covered the door precluding her from exiting the room." ECF No. 1 ¶ 18. Without further detail about Plaintiff's attempt to leave or about the manner in which Ferguson "covered" the door, or other communications or circumstances surrounding this incident beyond what it is alleged here, the Complaint fails to establish a seizure.

The Complaint also fails to plead facts establishing that any such seizure was unreasonable; Plaintiff merely alleges in conclusory terms that there was a "warrantless and unlawful seizure." *Id.* ¶ 33.

*ii. Fifth Amendment Claim*

Plaintiff's Fifth Amendment claim, based on substantially the same set of facts, alleges that Defendants "compelled [Plaintiff] to provide testimony through coercion, physical force or a show of authority such that a reasonable person would not feel free to answer any question posed to her despite having the assistance of counsel." ECF No. 1 ¶ 34. But despite this conclusory statement, the Complaint does not plead facts establishing that Plaintiff provided "testimony" at all; nor does the Plaintiff allege that her statements were ever used against her in any criminal proceeding. *See Hernandez v City of Chandler*, 2025 WL 3240950, at *8 (D. Ariz. Apr. 23, 2025) ("To maintain a § 1983 claim based on the violation of [the Fifth Amendment] right, an incriminating statement must be used against the plaintiff in a criminal prosecution." (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)). Plaintiff's Fifth Amendment claim is also inadequately pleaded.

**B. Leave to Amend and State Claims**

The Court determines that Plaintiff's Fourth and Fifth Amendment claims may be subject to cure by amendment, and grants Plaintiff leave to amend these claims.

Plaintiff's remaining claims allege violations of the California Constitution and various California statutes. Pursuant to 28 U.S.C. § 1367(c)(3), a "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has

dismissed all claims over which it has original jurisdiction." Unless Plaintiff is able to adequately plead a federal claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[1]

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss, as follows:

1. Plaintiff's First Cause of Action is **DISMISSED**, based on Plaintiff's non-opposition, as to Plaintiff's Sixth Amendment claim and as to all claims against Defendants Acayan and Eustaquio.
2. The remainder of Plaintiff's First Cause of Action is **DISMISSED WITH LEAVE TO AMEND** as to Plaintiff's Fourth and Fifth Amendment claims.
3. Plaintiff may file an amended complaint addressing the deficiencies set forth herein within ***fourteen (14) days of the date of this order***. If Plaintiff fails to do so, the Court will dismiss the state causes of action for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated: October 16, 2026

Hon. Robert S. Huie
United States District Judge

[1] The Court declines to address at this time Defendants' arguments for dismissal of Plaintiff's state claims, but will address these arguments in the event Plaintiff successfully pleads a federal claim.